**No. 26-376**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

ZACHARY ROSENBAUM,
*Plaintiff-Appellant,*

v.

CITY OF SAN JOSE, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:20-cv-04777-NC
Hon. Nathanael M. Cousins, Magistrate Judge

# APPELLANT'S REPLY BRIEF

STANLEY GOFF (State Bar No. 289564)
LAW OFFICE OF STANLEY GOFF
15 Boardman Place, Suite 2
San Francisco, CA 94103
(415) 571-9570 | lawyerstangoff@gmail.com

FULVIO F. CAJINA (State Bar No. 289126)
LAW OFFICE OF FULVIO F. CAJINA
528 Grand Ave.
Oakland, CA 94610
(415) 601-0779 | fulvio@cajinalaw.com

*Attorneys for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......iii

INTRODUCTION......1

ARGUMENT......3

I. Rosenbaum did not forfeit his challenge to the dismissal of his state-law claims......3

A. The claims were pleaded, defended, and decided on the merits......3

B. The governing standard is a pure question of law that Appellees concede......5

C. The argument rests on pleaded facts, not new ones......5

II. The district court's state-law ruling rested on its federal analysis, not on an independent application of California law......7

A. The negligence ruling treated California negligence as coextensive with federal reasonableness......8

B. The battery ruling borrowed the qualified-immunity framing......9

C. Vos does not help Appellees......9

III. Read in Rosenbaum's favor, the complaint plausibly alleges unreasonable force in both the canine release and the beanbag round......10

A. Appellees rely on inferences drawn against the plaintiff......10

B. The district court's own Graham analysis credited the facts that defeat the dismissal......12

C. The canine release......13

D. The beanbag round......15

E. The Hayes analysis independently supports reversal of the negligence claims......16

IV. The Bane Act claim is not before the Court......16

V. The verdict on the duration claim does not make the dismissal harmless......17

A. Appellees offer no harmlessness argument for the beanbag round..........17

B. The dismissal order's ruling on the release controlled every state claim based on it........................................................................17

C. Appellees bear a heavy burden, and Tennison does not carry it..............19

D. The jury answered a different question...................................................19

E. The Hayes theory was never tried...........................................................21

F. Tennison is distinguishable on its own terms..........................................22

CONCLUSION.................................................................................................23

CERTIFICATE OF COMPLIANCE..................................................................24

CERTIFICATE OF SERVICE...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68 (9th Cir. 2022)....................................................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................11

*Brown v. Ransweiler*, 171 Cal. App. 4th 516 (2009)..............................................4, 9

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010)...............................................13

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994)..........................................................21

*Chinaryan v. City of Los Angeles*, 113 F.4th 888 (9th Cir. 2024).........17, 19, 21, 22

*Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009).......................................................19

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)...................................................9

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)....................................3, 11, 15

*Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995)..........................................19

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013)..................................................3, 12

*Graham v. Connor*, 490 U.S. 386 (1989)......................................................3, 12, 13

*Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013)....................................passim

*Hunter v. U.S. Department of Education*, 115 F.4th 955 (9th Cir. 2024) .....5

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .....12

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) (en banc) .....7, 14

*Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003) .....14

*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) .....13

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc) .....3, 12, 13, 14, 21

*Solis v. County of Los Angeles*, 514 F.3d 946 (9th Cir. 2008) .....19

*Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684 (9th Cir. 2001) .....19, 22

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) .....9, 10

*Weeks v. Angelone*, 528 U.S. 225 (2000) .....22

*Yee v. City of Escondido*, 503 U.S. 519 (1992) .....1, 4

**Constitutional Provisions**

U.S. Const. amend. IV .....1, 4, 8, 10

U.S. Const. amend. VII .....19

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 9, 10

## INTRODUCTION

Appellees defend the dismissal by changing the subject. They do not dispute that California law governs the state claims, that federal qualified immunity has no role in them, or that California negligence law is broader than the Fourth Amendment. AB 16, 20. They concede that *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013), requires the reasonableness of force to be judged on the totality of the circumstances, including the officers' conduct before force was used. AB 20 ("Appellees do not contend otherwise"). Instead they argue that Rosenbaum forfeited the point, that the complaint pleaded nothing to which *Hayes* could apply, and that a later jury verdict on a different question makes any error harmless. Each argument fails.

*First*, nothing was forfeited. Rosenbaum pleaded battery and negligence claims based on the initial canine release and the beanbag round, defended them below, and the district court decided them on the merits. A party defending a preserved claim on appeal is "not limited to the precise arguments" made below. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). And the standard Appellees concede governs is a pure question of law.

*Second*, the pre-force conduct is in the complaint. Officers knew the reporting party was safe outside with them and that Rosenbaum was alone, asleep, and not reported to be armed. They entered his home, trained a half-dozen firearms

on him, refused to tell him why he was being arrested, and then released a dog and fired a beanbag round at a man standing still with his hands in the air. Those are pleaded facts, not appellate inventions.

*Third*, read in Rosenbaum's favor, those facts state unreasonable force under the settled factors. An unarmed man who stands visibly surrendered, makes no threat, and asks why he is being arrested is at most passively noncompliant. Releasing a bite-trained dog and firing a lead-filled projectile at him is not reasonable as a matter of law. Indeed, when it analyzed the bite's duration, the district court itself relied on those facts to find that the threat and flight factors favored Rosenbaum. ER-18:4–19:1.[1]

*Fourth*, the verdict does not make the error harmless. Appellees make no harmlessness argument at all as to Ferguson's beanbag round. As to Dunn, the jury decided only whether he let the bite go on too long once it had begun. The court told the jury, twice, that it was not deciding whether Dunn's deployment of the dog was lawful. That is the very question the dismissal took from it. Appellees themselves insist the two questions "must be analyzed separately." AB 22.

The dismissal of the state-law claims arising from the initial canine deployment and the beanbag round should be reversed.

---

[1]Citations to the Excerpts of Record are to the ER's stamped page numbers. The answering brief cites the ER by PDF page, which runs two pages higher than the stamp; for example, its "ER-148" is ER-146, and its "ER-165" is ER-163.

## ARGUMENT

### I. Rosenbaum did not forfeit his challenge to the dismissal of his state-law claims.

#### A. The claims were pleaded, defended, and decided on the merits.

The Third Amended Complaint pleaded battery against Dunn for releasing the dog and against Ferguson for firing the beanbag round. TAC ¶¶ 53, 55 (ER-62:1–7, 62:18–24). Its negligence count runs against all defendants and incorporates those allegations, alleging a failure to exercise due care "in their handling of the Plaintiff as set forth above." TAC ¶¶ 66–67 (ER-64:6–10). Rosenbaum opposed dismissal on exactly that basis. His opposition argued that "Officer DUNN should never have released his K9 in the first place." ER-137:1–6. It applied the factors from *Graham v. Connor*, 490 U.S. 386, 396 (1989), to the release and the beanbag round: Rosenbaum was unarmed, had his hands up, posed no threat, was not fleeing, and was "at most, passively uncooperative"; the domestic dispute had ended before officers arrived; and a beanbag round is force "permissible only when a strong governmental interest compels" it. ER-137:21–139:12 (citing, among others, *Smith v. City of Hemet*, 394 F.3d 689, 702–03 (9th Cir. 2005) (en banc); *George v. Morris*, 736 F.3d 829, 839 (9th Cir. 2013); and *Deorle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001)). It then argued that because "the deployment of the police canine, the duration of the use of the canine attack and the use of the less lethal shotgun were unreasonable, the state law claims

based on those grounds are also sufficiently pled." ER-146:9–12. The district court then decided them on the merits. On Appellees' own account, the court "separately concluded that both initial uses of force were objectively reasonable" under California law. AB 9; *see* AB 1, 16, 20. That is the ruling on appeal.

Once a claim is properly presented, "a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee*, 503 U.S. at 534. This Court applies that rule to appellants: a new argument in support of a consistent claim is not a new claim. *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022) (per curiam). Rosenbaum's claim has never changed: the pleaded facts state battery and negligence under California law. Explaining on appeal why California's standard reaches those facts, and why the district court misapplied it, is argument in support of that claim.

Appellees fault the opposition for not explaining how California law "would be different from the federal analysis." AB 12 (citing ER-146:12–16). For battery, it is not different: a battery claim against an officer uses the same reasonableness standard as the Fourth Amendment. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527–28 (2009). Rosenbaum's battery argument on appeal is therefore the argument he made below, almost word for word. *Hayes* is additional authority for negligence only, and it makes that claim broader, not narrower. A plaintiff who argued that his

negligence claim succeeds under the federal standard does not forfeit the point that California's standard is more generous still.

*Hunter v. U.S. Department of Education*, 115 F.4th 955 (9th Cir. 2024), on which Appellees rely, does not hold otherwise. AB 13. It addresses new issues. It does not bar a litigant from citing additional authority for a claim the district court actually resolved.

**B. The governing standard is a pure question of law that Appellees concede.**

Even if the *Hayes* argument were treated as new, it would fall within the exception Appellees acknowledge for a purely legal issue that causes no prejudice. *Hunter*, 115 F.4th at 964; AB 13. *Hunter* itself applied that exception to reach a purely legal point the plaintiffs had not briefed below. Whether California's totality-of-the-circumstances standard, including pre-force tactical conduct, governs a negligence claim is a question of law. Appellees answer it the same way Rosenbaum does. AB 20. Applying it requires no new record; the Court reviews the same complaint the district court reviewed. Appellees identify no prejudice, and there is none.

**C. The argument rests on pleaded facts, not new ones.**

Appellees' real objection is that the opening brief referred to "tactical blunders," "failure to de-escalate," and "departmental K-9 guidelines." AB 13–15. Rosenbaum does not ask the Court to consider any fact outside the complaint, and

he does not rely on any departmental guideline. The *Hayes* argument rests on the pre-force conduct the complaint does allege:

- Officers spoke with the reporting party outside the home; she was with them and safe. TAC ¶ 17.
- Rosenbaum was inside, alone and asleep, and no one reported that he was armed. TAC ¶¶ 18, 21.
- Officers entered and took positions inside the home, although they had it surrounded and a helicopter overhead. TAC ¶¶ 22–23.
- Six officers trained firearms on him while he stood on the landing with his hands raised. TAC ¶¶ 19, 22.
- Officers told him he was under arrest but repeatedly refused to say why. TAC ¶¶ 19–20.
- Dunn, "[l]osing patience" with those questions, released the dog; Ferguson fired within about a second. TAC ¶¶ 24–25 (ER-53); ER-4:26–5:13.
- Less intrusive alternatives were available. Appellees acknowledge the complaint so alleges. AB 20–21 (citing ER-58:20–59:2, 62:2–7).

The opening brief's language is fairly read as describing these allegations. Under *Hayes*, a factfinder could conclude that the officers' choices, entering rather than containing, refusing a simple explanation, and escalating straight to

simultaneous dog and projectile force, made the force they used unreasonable. Nothing in that argument requires the Court to "construct allegations." AB 13.

## II. The district court's state-law ruling rested on its federal analysis, not on an independent application of California law.

Appellees call the opening brief an attack on a "straw man" that ignores a "thoroughly reasoned decision." AB 13. The order shows otherwise. On the canine release, the court never decided whether the force was reasonable under federal law. It skipped the first prong of qualified immunity and "analyze[d] only the guiding case law at the time of the incident." ER-9:22–25. Its only reasonableness ruling on the release is one paragraph in the battery section. That paragraph opens by recalling the clearly-established holding and then says Dunn's actions "were also reasonable." ER-41:19–42:9. The beanbag ruling is three sentences. ER-42:21–43:2.

The reasons those paragraphs give come from the qualified-immunity discussion, not from California law. The battery ruling on the release rests on three points: Dunn believed Rosenbaum had committed a violent crime; Dunn warned that the dog would be released; and Rosenbaum "does not allege that Officer Dunn knew that Plaintiff was unarmed or that there were no weapons on the second floor." ER-41:21–26. Its only authority is *Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) (en banc). ER-42:4–6. Each premise traces to the qualified-

immunity section, which inferred that the house was "dark" because officers used flashlights and that Rosenbaum "could potentially access weapons on the second floor." ER-10:16–24. Those are inferences against the plaintiff, imported from a doctrine that does not apply to state claims.

### A. The negligence ruling treated California negligence as coextensive with federal reasonableness.

Appellees describe the court as dismissing negligence "based on force it had found reasonable." AB 20. That is what happened, and it is the error. The order dismissed negligence against Ferguson in one sentence: the court "has already found that Officer Ferguson acted reasonably in deploying the less-lethal bean-bag shotgun." ER-46:3–5. It took its negligence standard from two district-court decisions, did not cite *Hayes*, and never asked whether the officers' pre-force decisions bore on the reasonableness of the force. ER-45:15–28. Yet California's negligence standard is broader than the Fourth Amendment: "the state and federal standards are not the same." *Hayes*, 57 Cal. 4th at 639. Tactical conduct and decisions preceding force can show, as part of the totality of the circumstances, that the force was unreasonable. *Id.* A negligence ruling that is a cross-reference to a battery ruling, which itself rests on a qualified-immunity discussion, has not applied California law.

Appellees answer that the court "considered" pre-force events such as the domestic-violence report, the commands, and the warnings. AB 15. Every one of

those events is a fact Appellees offer to *justify* force. *Hayes* requires the factfinder to weigh the officers' own choices as well, including choices that may have created or escalated the need for force. The order did not do that. Its account of the "totality" ran in one direction.

**B. The battery ruling borrowed the qualified-immunity framing.**

Rosenbaum agrees that California battery claims against officers apply an objective-reasonableness standard. *Brown*, 171 Cal. App. 4th at 526–28. He also agrees that qualified immunity "does not extend to state tort claims against government employees." *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009) (citation omitted). The point is narrower. A court deciding qualified immunity asks whether any reasonable officer could have believed the force lawful under existing precedent. A court deciding a Rule 12(b)(6) motion on a state tort asks only whether the pleaded facts, read in the plaintiff's favor, plausibly show unreasonable force. The order collapsed the two inquiries by deciding the second through the lens of the first. That is why it credited officer uncertainty that the complaint does not allege (Part III, below).

**C. Vos does not help Appellees.**

Appellees cite *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018), to show that federal law also considers events leading up to force. AB 14. That only underscores that the district court had to weigh the full sequence,

including the officers' choices, in Rosenbaum's favor. *Vos* also recognized that California negligence law looks at the officers' conduct more broadly than the Fourth Amendment does. *Id.* at 1037. Citing it cannot cure an order that never applied that broader standard.

## III. Read in Rosenbaum's favor, the complaint plausibly alleges unreasonable force in both the canine release and the beanbag round.

### A. Appellees rely on inferences drawn against the plaintiff.

Appellees say the district court accepted every well-pleaded fact and merely "considered those facts together with the complaint's other allegations." AB 18–19. But their defense of the ruling depends on inferences the complaint does not support and Rule 12(b)(6) does not permit.

*Weapons.* Appellees fault Rosenbaum for not pleading "lack of access to weapons upstairs" and for not alleging that "officers knew he was unarmed." AB 22; *see* AB 19. The complaint alleges that he was unarmed, that no one reported a weapon, that he stood in a tank top and sweatpants with both hands raised and visible, and that he made no threatening movement. TAC ¶¶ 18–26 (ER-52–54). A plaintiff need not negate every speculative risk an officer might later posit. The order nonetheless faulted Rosenbaum for not alleging that Dunn "knew that Plaintiff was unarmed or that there were no weapons on the second floor." ER-41:25–26. Inferences run to the plaintiff. A generalized concern that a suspect *might* have a weapon somewhere is exactly the kind of unsupported fear this Court

has rejected: "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281.

*Elevation.* Appellees invoke Rosenbaum's "elevated position" on the landing. AB 19, 23. They do not explain how standing still at the top of one's own staircase, hands raised, surrounded by armed officers below and a helicopter above, made an unarmed man dangerous. The complaint alleges no movement toward the officers or away from them.

*Labels.* Appellees say "nonthreatening" and "not resisting" are legal conclusions. AB 19. Perhaps those words are. But the facts beneath them are not: hands up throughout, no verbal or physical threat, no weapon, no attempt to flee, polite questions about why he was being arrested. TAC ¶¶ 18–26 (ER-52–54). Those are exactly the "factual content" *Iqbal* requires the Court to accept. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*The police report.* Appellees emphasize language in the incorporated police report that the opening brief did not quote. AB 21 n.1. The report describes what was reported, not what happened, and it also records only an "apparent minor injury" to a reporting party who was outside and safe. Even taken at face value, a report of a past domestic assault does not show that a man standing alone with his hands up posed an *immediate* threat. To the extent the order used the report to

resolve disputed facts against Rosenbaum, that was improper. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint"). The order recited from the report, as fact, that the fiancée had visible marks, that Rosenbaum had been violent in the past, and that she once obtained a restraining order. ER-3:15–21.

### B. The district court's own Graham analysis credited the facts that defeat the dismissal.

When the court analyzed the duration of the bite, it applied the *Graham* factors with inferences drawn for Rosenbaum. It credited that he stood "at the top of his stairs, with his hands in the air, clad only in a tank top and sweatpants, and was completely unarmed"; that no one reported a weapon; that he made no threat; that at least six officers had firearms trained on him; and that the home was surrounded with a helicopter overhead. ER-18:4–12. Relying on those facts and on his later prone position, it held that the "most important" factor, immediate threat, favored Rosenbaum. ER-18:13–17. It held that the flight factor favored him because he "stood stationary on his second floor landing with his hands held in the air" and "could not flee." ER-18:18–19:1. And it recognized that a domestic-violence report provides "little, if any, basis" for force once the suspect is separated from the reporting party. ER-17:6–16 (quoting *Smith*, 394 F.3d at 702–03, and citing *George*, 736 F.3d at 839).

Every one of those facts existed when Dunn released the dog and Ferguson fired. The court never explained why the standing, unarmed, surrounded, hands-up man it found non-fleeing could reasonably be bitten and shot a moment earlier. Its battery ruling on the release does not mention the immediate-threat factor at all. ER-41:19–42:9. Applied consistently, with inferences for the plaintiff as the order itself applied them, the *Graham* factors make both the release and the beanbag round plausibly unreasonable.

**C. The canine release.**

The most important factor is whether the suspect posed an immediate threat to the safety of officers or others. *Smith*, 394 F.3d at 702. On the pleaded facts, Rosenbaum did not. He was unarmed, visibly surrendered, alone, and covered by six firearms. The reporting party was outside with officers. No bystander was inside.

The other factors point the same way. The reported offense was a domestic incident that had ended, with an "apparent minor injury." Rosenbaum's only "resistance" was failing to walk downstairs while asking why he was under arrest. "[A] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012); *see* ER-137:7–10 (arguing *Nelson* below). *Bryan v. MacPherson*, 630 F.3d 805, 829–30 (9th Cir.

2010). Officers must also consider “what other tactics if any were available.” *Id.* at 831. Here the house was surrounded, a helicopter overhead, and the suspect in plain view. Nothing required immediate force.

*Smith* is the closer analogue, not the cases Appellees cite. There, officers responding to a domestic-violence call confronted a man on his porch who repeatedly refused commands: to take his hands out of his pockets, to put them on his head, and to come off the porch. He even went back inside once. The en banc Court held that a jury could find the use of a police dog and pepper spray excessive. 394 F.3d at 701–02. Rosenbaum’s case is stronger: his hands were up, and he never left the officers’ view. The order distinguished *Smith* only because the officers there used more force, more times. ER-10:25–11:19. That distinction went to whether the law was clearly established. California law asks only whether the force actually used here was reasonable.

Appellees’ cases involved suspects who were hidden, in the dark, or fleeing. In *Lowry*, officers responding to a late-night burglar alarm sent a dog into a dark commercial suite after warnings went unanswered; they could not see who was inside. In *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003), the suspect had fled into dark woods. Concealment and flight were what made the dog’s use reasonable. Rosenbaum was lit by flashlights, standing still, and talking to the officers.

The warnings do not change the analysis. A warning matters when force is otherwise justified; it cannot supply a justification that is missing. Telling a non-threatening man that a dog will be released if he does not come downstairs does not make releasing it reasonable.

**D. The beanbag round.**

Appellees say Ferguson's round "presents a separate question" and rely on its timing: Ferguson fired within about a second after the dog was released, and the complaint does not allege that he knew the dog had secured Rosenbaum. AB 23. That reverses the inquiry. The question is not whether Ferguson had time to reassess after the dog was released. It is whether firing a lead-filled projectile at Rosenbaum was justified at all. On the complaint, the circumstances in that second were the same ones that made the dog release unreasonable: hands up, no weapon, no threat, no flight.

A beanbag round is force "capable of causing serious injury," permissible "only when a strong governmental interest compels" it. *Deorle*, 272 F.3d at 1280. In *Deorle*, this Court held that firing such a round at an unarmed man who posed no immediate threat, without warning, was excessive. *Id.* at 1284–85. The complaint here alleges a warning about the dog, not about the beanbag. TAC ¶ 20; ER-4:18–20. Firing both at once, at a man with his hands up, compounds rather than reduces the problem.

Appellees also note that the complaint "attributes no injury" to the round. AB 5. The order itself acknowledged that the round struck him in the stomach. ER-25:17–18. Being hit in the abdomen by a lead-filled projectile is harmful contact; the extent of injury goes to damages, not to whether a claim is stated.

### E. The Hayes analysis independently supports reversal of the negligence claims.

Even if the Court found the battery claims a closer call, the negligence claims stand on broader ground. Under *Hayes*, the factfinder weighs the officers' pre-force choices, including the decision to confront a sleeping, unarmed man inside his home when the reporting party was safe; the refusal to tell him why he was being arrested; and the decision to deploy two forms of force at once rather than wait out a contained, visible, non-threatening suspect. 57 Cal. 4th at 639. Those pleaded choices make negligence plausible.

## IV. The Bane Act claim is not before the Court.

The district court dismissed the Bane Act claim on grounds independent of its force analysis: the complaint did not plead specific intent, and Rosenbaum did not respond to that argument below. ER-44:17–45:10. Rosenbaum does not ask the Court to reach that claim. The battery and negligence rulings stand or fall on their own, and Appellees' discussion of the Bane Act (AB 17–18) has no bearing on them.

## V. The verdict on the duration claim does not make the dismissal harmless.

### A. Appellees offer no harmlessness argument for the beanbag round.

Appellees' harmlessness argument is limited to "Dunn's initial canine deployment." AB 24. They do not argue that the verdict has any bearing on Ferguson's beanbag round, which was never tried. Any harmlessness argument as to Ferguson is forfeited. Nor could one succeed: the court instructed the jury: "You are not deciding whether Officer Ferguson's deployment of a less lethal projectile was lawful or not." SER-25:17–18. *See Chinaryan v. City of Los Angeles*, 113 F.4th 888, 903 (9th Cir. 2024) (harmlessness argument not developed in answering brief is forfeited).

### B. The dismissal order's ruling on the release controlled every state claim based on it.

Appellees say the district court let the claims against Dunn proceed only "to the extent they rested on the alleged continuation of that bite." AB 6–7. That is how the case was litigated after the dismissal, and it is the consequence of the ruling on appeal. The order held that Dunn's release of the dog was "reasonable." ER-41:19–42:9. It then treated that holding as disposing of negligence as well. It dismissed the negligence claim against Ferguson in one sentence because it had "already found that Officer Ferguson acted reasonably." ER-46:2–7. And it sustained the negligence claim against Dunn only on the ground that he let the bite continue for more than twenty seconds. ER-45:25–46:1.

Every later stage of the case treated the release as decided. At summary judgment, the court stated that "[a]s the Court established in the prior order, the initial deployment of Kurt was reasonable," and framed the only remaining question as the dog's "continued use." FER-15:3–6. It confined the battery and negligence claims against Dunn to whether he acted unreasonably "for failing to remove the police dog." *Id.* at FER-22:19–23:3. The page of the dismissal order it cited for the deployment's reasonableness is the qualified-immunity ruling, not a merits holding. ER-12. At trial, the court told the jurors: "You are not deciding whether Officer Dunn's deployment of the police K9 was lawful or not." SER-25:19–20. It defined the force at issue in both the battery and negligence claims as Dunn "allowing his police K9 to continue to bite" Rosenbaum. SER-32:12–17, 33:14–24. Appellees themselves describe the verdict as finding no battery or negligence "based on his continuation of the canine bite." AB 24. And the final judgment was entered on all claims expressly "[i]n accordance with" the dismissal order. FER-3:16–25.

The dismissal order is therefore the only ruling on whether releasing the dog was a battery or was negligent under *Hayes*, and it applied the wrong standard. *See* Part II, *supra*. No jury has considered the question. A verdict on a question the jury was told not to decide cannot make harmless the ruling that removed it.

**C. Appellees bear a heavy burden, and Tennison does not carry it.**

This Court presumes prejudice from civil error, and the party claiming harmlessness bears the burden. *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). An erroneous ruling that takes a claim from the jury implicates the Seventh Amendment. Such error is harmless only if "no reasonable jury could have found for the losing party." *Solis v. County of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1533 (9th Cir. 1995)); *see Chinaryan*, 113 F.4th at 904.

Appellees rely solely on *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 691 (9th Cir. 2001). AB 3, 24. This Court has since observed that *Tennison* "does not clearly identify the harmlessness standard it applies." *Chinaryan*, 113 F.4th at 904. And *Chinaryan* declined to find a summary-judgment error harmless where the trial that followed asked the jury a narrower question than the dismissed claims would have. *Id.* at 904–05. That is this case.

**D. The jury answered a different question.**

The verdict form asked whether Dunn used excessive force "by allowing the police canine to bite Zachary Rosenbaum for an unreasonable amount of time." SER-4:8–11 (Q. 1-1). Its state-law questions asked whether Dunn was "liable for a battery" and "negligent in using force." SER-7:19–21, 8:4–6 (Qs. 4-1, 5-1). The instructions told the jury what force those questions meant. Because of the

dismissal, the lawfulness of the initial release was not before it. The court told the jury at the outset: “You are not deciding whether Officer Dunn’s deployment of the police K9 was lawful or not.” SER-25:19–20. It repeated the point in the excessive-force instruction: “You are not to consider whether the deployment of the police K9 or the use of the less lethal projectile weapon were lawful . . . . Your inquiry is limited to the duration of the bite.” SER-32:1–5. And the negligence instruction asked only whether Dunn’s “use of force by allowing his police K9 to continue to bite Zachary Rosenbaum’s arm was unreasonable.” SER-33:17–19; *see* SER-32:12–17 (battery: same). Appellees read the verdict the same way: the jury “found that Rosenbaum did not prove battery or negligence against Dunn based on his continuation of the canine bite.” AB 24. A jury told to assess only how long the bite lasted necessarily took the bite’s start as given.

Appellees’ “zero seconds” argument assumes otherwise. AB 3, 25. It posits that a jury that thought the release was unreasonable would have found any duration unreasonable. But this jury was told it was not deciding whether the release was lawful. Its finding that maintaining an already-begun bite for the time it lasted was reasonable says nothing about whether the dog should have been released at a surrendered, unarmed man at all. A reasonable jury could find both that the release was unreasonable and that, once the dog had engaged, the handler’s efforts to end the encounter took a reasonable time.

Appellees' own brief makes this point. Explaining why *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994), and *Smith* do not control, Appellees argue that "initial deployment and continued biting must be analyzed separately." AB 22. They are right. The two theories involve different decisions at different moments, judged on different facts. A verdict on one cannot stand in for the other.

**E. The Hayes theory was never tried.**

The dismissed negligence theory rests on the officers' pre-force choices: entering, confronting at gunpoint, refusing an explanation, and releasing the dog at a visibly surrendered man. A trial confined to the bite's duration had no occasion to test whether those choices made the release negligent. Appellees point to an instruction that referred to "the conduct leading up to the force." AB 25 (citing SER-33:1–34:18). That language is in the instruction defining unreasonable force for the state claims. SER-34:10–18. Those claims, in turn, defined "the use of force" as Dunn "allowing his police K9 to continue to bite" Rosenbaum. SER-32:12–17, 33:14–24. Conduct "leading up to" the continued bite includes the release only as background to the question of duration. The court had already told the jury it was "not deciding whether Officer Dunn's deployment of the police K9 was lawful or not." SER-25:19–20. And as in *Chinaryan*, counsel's trial presentation was shaped by the dismissal. Rosenbaum could not argue that the

release was unlawful, and "would have argued the case differently" had he been permitted to. *See Chinaryan*, 113 F.4th at 905.

Appellees' trial counsel tried to blur that line in closing, telling the jury that both state claims "depend on the circumstances leading up to the use of force" and that the officers "did what they needed to do to get him into custody and what they had warned him they would do." SER-81:1–12, 82:19–22. But argument is not instruction, and the jury is presumed to follow the court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). If anything, the closing shows the imbalance the dismissal created. Appellees could invoke the events before the bite to justify it, while Rosenbaum, bound by the ruling that the release was reasonable, could not argue that the release itself was unlawful. His counsel told the jury so. After noting the officers' testimony about the moments before the dog was deployed, counsel said: "that's not what we are interested in, what we are interested in is that time on the landing, that's all that we are here to decide." SER-48:4–12.

**F. Tennison is distinguishable on its own terms.**

In *Tennison*, the dismissed emotional-distress claims rested on the same harassing conduct the jury had already found not actionable. 244 F.3d at 691. Here the dismissed claims rest on different conduct, the decision to release the dog, that no jury has evaluated. It is not "highly unlikely," *id.*, that a jury would find for Rosenbaum on a question it was never asked.

## CONCLUSION

The Court should reverse the dismissal of Rosenbaum's California battery and negligence claims arising from Dunn's initial release of the police dog and Ferguson's beanbag round, and remand for trial on those claims.

Dated: November 2, 2026

Respectfully submitted,

LAW OFFICE OF STANLEY GOFF

/s/ Stanley Goff
STANLEY GOFF
LAW OFFICE OF FULVIO F. CAJINA
FULVIO F. CAJINA
*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

*Form 8. Certificate of Compliance for Briefs*

9th Cir. Case Number(s): 26-376

I am the attorney or self-represented party.

This brief contains 5,245 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief (select only one):

[X] complies with the word limit of Cir. R. 32-1.

Signature: /s/ Stanley Goff Date: November 2, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2026, I electronically filed the foregoing Appellant's Reply Brief and Appellant's Further Excerpts of Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system. All participants in the case are registered ACMS users and will be served by the ACMS system.

/s/ Stanley Goff
STANLEY GOFF