**No. 26-376**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

ZACHARY ROSENBAUM,
Plaintiff-Appellant,

v.

CITY OF SAN JOSE, et al.,
Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California
Case No. 5:20-cv-04777-NC
Hon. Nathanael M. Cousins, Magistrate Judge

# APPELLANT'S FURTHER EXCERPTS OF RECORD

Volume 1 of 1

STANLEY GOFF (State Bar No. 289564)
LAW OFFICE OF STANLEY GOFF
15 Boardman Place, San Francisco, CA 94103
(415) 571-9570

FULVIO F. CAJINA (State Bar No. 289126)
LAW OFFICE OF FULVIO F. CAJINA
528 Grand Ave., Oakland, CA 94610
(415) 601-0779

Attorneys for Plaintiff-Appellant

# INDEX



| Filing Date | Dkt. No. | Description | Page |
|---|---|---|---|
| 12/15/25 | 260 | Judgment | FER-3 |
| 11/28/22 | 144 | Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment | FER-4 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

ZACHARY ROSENBAUM,
Plaintiff,

v.

CITY OF SAN JOSE, et al.,
Defendants.

Case No. 20-cv-04777-NC

**JUDGMENT**

In accordance with (1) the Court's December 23, 2021, Motion to Dismiss Order at ECF 63, (2) the Court's November 28, 2022, Summary Judgment Order at ECF 144, and (3) the jury's December 15, 2025, unanimous verdict, judgment is entered in favor of Defendants Officer Hymel Dunn, Officer Ryan Ferguson, Sergeant Bret Hatzenbuhler, Sergeant David Gutierrez, Officer Gary Anderson, Officer Gilberto Tapia, Officer Francisco Vallejo, Officer Manuel Ochoa, and the City of San Jose, and against Plaintiff Zachary Rosenbaum. Specifically, the Court enters judgment as follows: in favor of all Defendants on Plaintiff's 42 U.S.C. § 1983 claim; in favor of all Defendants on Plaintiff's battery claim; in favor of all Defendants on Plaintiff's California Bane Act claim; and in favor of all Defendants on Plaintiff's negligence claim. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 15, 2025

NATHANAEL M. COUSINS
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



ZACHARY ROSENBAUM,
Plaintiff,

v.

OFFICER HYMEL DUNN, and others,
Defendants.

Case No. 20-cv-04777-NC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: ECF 98

This case arises from San Jose Police Department Officers' use of a police dog to apprehend an uncooperative suspect. Police officers were called regarding an alleged domestic violence incident committed by Plaintiff Zachary Rosenbaum. A canine unit was dispatched to the scene consisting of Defendant Officer Hymel Dunn and his police dog, Kurt. In addition to Officer Dunn, an arrest team was assembled, consisting of Defendants Sergeants Bret Hatzenbuhler and David Gutierrez and Officers Ryan Ferguson, Gary Anderson, Tapia, Ochoa, and Vallejo (collectively, "Defendant Officers" or "Defendants"). After Rosenbaum failed to surrender to arrest, Officer Dunn deployed Kurt, who bit Rosenbaum for over twenty seconds while the Defendant Officers worked to subdue him. Rosenbaum sued the Defendant Officers and the City of San Jose, alleging violations of his constitutional rights and various state law claims stemming from the dog bite. Defendant Officers now move for summary judgment.

The central issue is whether Plaintiff has shown that a jury could conclude that

Officer Dunn acted unreasonably by allowing the police dog to bite Rosenbaum for over twenty seconds before removing him. The other issues to be resolved are (1) whether Officer Dunn and the remaining Defendant Officers are entitled to qualified immunity; and (2) whether Officer Dunn is liable for battery and negligence. After considering the parties' briefings, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.

**BACKGROUND**

**I. Factual Background**

On September 10, 2019, the San Jose Police Department received a service call from Rosenbaum's girlfriend, reporting that Rosenbaum physically assaulted her and threatened to sexually assault her. ECF 98-5 ("Zanotto Decl.") ¶¶ 3-4; ECF 101-3 ("Rosenbaum Decl.") ¶ 5. The domestic dispute was precipitated by Rosenbaum's purported intoxication. ECF 98-1 ("Hatzenbuhler Decl.") ¶ 9; *see also* Rosenbaum Decl. ¶ 4, Ex. 1. The victim reported that Rosenbaum was trained in martial arts and had a previous altercation with police officers. Zanotto Decl. ¶ 7; Rosenbaum Decl. ¶ 7. The victim further noted that Rosenbaum previously owned a firearm, however she was unsure whether it had been destroyed in a fire. *Id.*

An arrest team was assembled at the victim's home, comprised of the Defendant Officers. Hatzenbuhler Decl. ¶ 7. Officer Dunn was the canine officer responsible for handling the police dog, Kurt. ECF 98-3 ("Dunn Decl.") ¶ 4. The arrest team was briefed by Officer Zanotto on Rosenbaum's domestic assault, intoxication status, potential firearm ownership, and previous altercations with the police. Dunn Decl. ¶ 8.

The arrest team entered on the first floor of the home and shouted commands for Rosenbaum to surrender. Hatzenbuhler Decl. ¶ 14. Five minutes after entering the home, Rosenbaum appeared at the top of the stairs above the officers' position. Hatzenbuhler Decl., Ex. D at 5:45. The officers made repeated commands for Rosenbaum to come downstairs or else a police dog would be sent up to bite him. *Id.* at 8:23. Rosenbaum did not comply with these commands. After over five minutes of attempting to negotiate

Rosenbaum's surrender, Officer Ferguson deployed a less-lethal stun bag projectile, which struck Rosenbaum in the abdomen. Hatzenbuhler Decl. ¶ 21. Almost simultaneously, Officer Dunn released Kurt to apprehend Rosenbaum. Dunn Decl. ¶ 21.

The parties' accounts of the resulting events diverge following the release of the police dog. The following facts represent these discrepancies that form the foundation of Rosenbaum's claims, as well as Defendants' motion for summary judgment.

**A. Plaintiff's Level of Cooperation**

The parties' dispute Rosenbaum's level of cooperation with the arrest team throughout the encounter. Prior to the dog's release, Rosenbaum alleges he had his hands up the entire time. Rosenbaum Decl. ¶ 5. The Defendants, however, assert that Rosenbaum lowered his hands out of view of the officers several times. Hatzenbuhler Decl. ¶ 18; Dunn Decl. ¶ 18.

The TAC further alleges that "after the K-9 was deployed to bite the Plaintiff, and while the Plaintiff was laying on his stomach in full surrender with his hands stretched out and surrounded by all named Defendants with their firearms trained on him, that the K-9 was allowed to continue biting the Plaintiff's for over 20 seconds, before being pulled away." TAC ¶ 27. However, Plaintiff appears to revise this claim by asserting Rosenbaum was simply "on the ground" when the Defendant Officers ascended the stairs. Opp. at 6. Defendants, on the other hand, assert that Rosenbaum was "seated in the hallway with his back against the wall with K9 Kurt engaged onto his right arm." ECF 98-4 ¶ 8, Ex. B at 4. The body camera footage supports the Defendants' assertions that Rosenbaum was in a seated position, however it is unclear from the video whether Rosenbaum was raising his arms in surrender at this point. *See* Dunn Decl. ¶ 17, Ex. A.

**B. Duration of the Dog Bite**

Once the Officers ascended the stairs, the parties dispute the amount of time the police dog, Kurt, was engaged in the bite. Defendants allege the parties agree that "the time elapsed from when officers could see the dog on the bite to when the dog was removed was 25 seconds." Reply at 1. Plaintiff's expert witness, Ernest Burwell, agreed

United States District Court
Northern District of California

United States District Court
Northern District of California

that the video does show the dog engaged on the bite for 25 seconds. McGee Decl. ¶ 3 at 127:21-23. However, Mr. Burwell asserts in his expert report that the audio times from the body cam footage show that the bite lasted "forty-three seconds." ECF 101-1 at 9. Defendants, on the other hand, allege that the total time form when the dog was released to when it was taken off the bite was "approximately 42 seconds." McGee Decl. ¶ 3 at 128:25-129:1.

### C. Opportunity for Officer Intervention

Lastly, the parties contest the actions of the individual officers once they reached Rosenbaum's location at the top of the stairs. Plaintiff states the Defendant Officers were "training their weapons on Plaintiff and assisting with his arrest." Opp. at 6. Defendants provide a more detailed account of each individuals' actions. Officer Vallejo was purportedly first up the stairs to provide lethal coverage on Rosenbaum and the unsearched rooms to ensure the safety of the other officers." Hatzenbuhler Decl. ¶ 23. Officers Anderson and Ferguson each subdued Rosenbaum's left and right arm, respectively. *Id.* Officer Dunn was the third officer in the police column. *Id.*; *see also* Dunn Decl. ¶ 23. Moreover, Officer Dunn asserts the police dog was engaged in the bite "for approximately four seconds after [Dunn] confirmed Rosenbaum was under control of the other officers." Dunn Decl. ¶ 27.

## II. Procedural Background

Rosenbaum filed the instant suit against the Officer Defendants and the City of San Jose on July 16, 2020. ECF 1. Following several amendments to the original complaint, Rosenbaum filed a Third Amended Complaint ("TAC"). ECF 40. The TAC alleged four causes of action: (1) violation of 42 U.S.C. § 1982 against Defendant Officers; (2) battery against Defendant Officers; (3) violation of the Bane Act against Defendant Officers and the City of San Jose; and (4) negligence against Defendant Officers and the City of San Jose. *Id.* ¶¶ 37-71. Rosenbaum alleged three separate theories of excessive force arising from the deployment of the police dog, the duration of the police dog bite, and use of the less-lethal bean bag shotgun. *Id.* ¶¶ 37-41.

The Defendants filed a motion to dismiss the TAC. ECF 44. United States District Court Judge Lucy H. Koh granted in part and denied in part Defendants' motion to dismiss. ECF 63. Judge Koh dismissed Plaintiff's excessive force claims against the Defendant Officers based on the deployment of the police dog and use of the less-lethal bean-bag shotgun because no clearly established law prohibited such practices on uncooperative suspects. *Id.* at 12, 26. Judge Koh also dismissed Plaintiff's *Monell* claim against the City of San Jose. *Id.* at 40. Likewise, Judge Koh dismissed Plaintiff's Bane Act claim against all Defendants, as well as battery and negligence claims against Officers Hatzenbuhler, Gutierrez, Anderson, Ferguson, Tapia, Vallejo, and Ochoa for failure to allege sufficient factual support. *Id.* at 40-46. Each of these causes of action was dismissed with prejudice. *Id.* at 27, 47.

However, Judge Koh denied Defendants' motion to dismiss Plaintiff's excessive force claim in its entirety because Rosenbaum plausibly alleged that "Officer Dunn's use of his police canine for over twenty seconds constituted unconstitutionally excessive force under clearly established Fourth Amendment law." *Id.* at 23. Moreover, Judge Koh found that Plaintiff plausibly alleged that Sergeants Hatzenbuhler and Gutierrez and Officers Anderson, Ferguson, Ochoa, Tapia, Vallejo were integral participants for failing to intervene during the dog bite. *Id.* at 29-32. Lastly, Judge Koh denied Defendants' motion to dismiss the battery and negligence causes of action against Officer Dunn. *Id.* at 42, 46.

Shortly after the issuance of the motion to dismiss order, the case was reassigned to the undersigned Court. ECF 69. Defendants filed the present motion for summary judgment concerning the section 1983 claim against the Officer Defendants and the remaining state law claims against Officer Dunn. *See* ECF 98.

**LEGAL STANDARD**

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing

United States District Court
Northern District of California

substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 572 U.S. 651 (citing *Liberty Lobby*, 477 U.S. at 255).

## DISCUSSION

### I. Evidentiary Objections

On reply, Defendants object to Exhibit Two of the Cajina declaration purportedly depicting body camera footage from the night of the incident. Reply at 4. Defendants also object to the declaration of Plaintiff's expert, Ernest Burwell, on various evidentiary grounds. *Id.*

#### A. Body Camera Footage

Defendants object to Exhibit Two which contains a dropbox link to a video of what appears to be body worn camera footage from the night of the incident. *See* ECF 101-2, Ex. 2. Defendants object that the footage lacks authentication. Reply at 4. The Court's opinion does not rely on this evidence. Accordingly, the Court does not address Defendants' objection beyond reminding Plaintiff that all evidence at trial must be properly authenticated. *See Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011).

For these reasons, the Court OVERRULES Defendants' objections to Plaintiff's Exhibit Two as moot.

**B. Burwell Declaration**

Defendants also broadly object to Mr. Burwell's "declaration" on various grounds, including lack of personal knowledge, speculation, hearsay, relevancy, and improper opinions. Reply at 4. However, it is unclear as to whether Defendants object to the declaration in its entirety or only portions therein. On one hand, Defendants assert the "declaration . . . fails to comply with evidentiary requirements" which appears to claim the entire declaration is flawed. *Id.* On the other hand, Defendants also identify specific portions of the declaration that purportedly present improper expert opinions. *Id.* at 5. Beyond the vague presentation of these evidentiary objections, the form is redundant or unnecessary at this stage. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). For instance, scattershot objections to a piece of evidence's relevancy is particularly redundant in the summary judgment context since courts cannot rely on irrelevant facts in its analysis of whether a dispute of material fact exists. *Id.* As to Defendants' objections regarding Mr. Burwell's opinion of Rosenbaum's use as a training aid for the police dog to "establish a better bite," the Court's opinion does not rely on this evidence.

Because Defendants do not adequately delineate their objections, coupled with lack of reliance on the identified portion of the declaration, the Court OVERRULES Defendants' objections to Mr. Burwell's declaration.

**II. Qualified Immunity**

Rosenbaum alleges the Defendant Officers violated section 1983 during his arrest "by deliberately and intentionally allowing the K-9 to continue to bite the Plaintiff for over 20 seconds." ECF 40 ¶ 39. The Officers counter that their actions are shielded from liability based on the doctrine of qualified immunity. *See* Mot. at 20.

Section 1983 provides plaintiffs with a cause of action when a person acting under the color of state law deprives them of any federal constitutional right. 42 U.S.C. § 1983.

United States District Court
Northern District of California

United States District Court
Northern District of California

Government officials, however, are immune from suit under 42 U.S.C. § 1983 unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015).

This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Courts analyze the application of qualified immunity according to a two-step sequence. The first step centers on the alleged conduct and whether it was unconstitutionally excessive. *See Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017). If this factor is satisfied, the second factor focuses on whether the law was sufficiently established to put a reasonable official on notice that the alleged conduct was unconstitutional. The Court follows the same framework set forth in Judge Koh's prior order. *See* ECF 63.

### A. Whether Officer Dunn's Actions Were Reasonable is a Question for Jury

Under the first step, courts analyze excessive force according to an objective reasonableness standard that balances the intrusion on the individual's Fourth Amendment interests against governmental interests. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). The Ninth Circuit instructs that reasonableness is assessed by a three-step analysis that considers "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Lowry*, 858 F.3d at 1256 (internal citations omitted).

#### 1. Severity of Intrusion

The severity of the intrusion in excessive force inquiries focuses on the type and amount of force inflicted. *Id.* The range of scenarios confronting the use of police dogs requires a highly fact-intensive analysis. *Id.* In *Lowry*, the court determined the dog bite was a "moderate" intrusion because the victim had relatively minor injuries requiring only

United States District Court
Northern District of California

three stitches. *Id.* at 1257. Moreover, the length of the dog bite was so brief that the officer was unsure whether the police dog even engaged the victim. *Id.* On the other hand, injuries resulting from police dog encounters can be severe. *See Miller v. Clark County.*, 340 F.3d 959, 964 (9th Cir. 2003). In *Miller*, the plaintiff's injuries required surgery, overnight stays in the hospital, and plaintiff suffered lasting effects from the dog bite. *Id.* at 961.

Defendants categorize the level of intrusion in this case as "moderate." Mot. at 11. However, hospital photographs of Rosenbaum's gaping wound belie the notion that this injury was moderate. *See* Rosenbaum Decl., Ex. 3. Beyond these images, the attack exceeded the brief encounter in *Lowry* because the bite lasted at least twenty-five seconds. McGee Decl. ¶ 3, Ex. A at 127:21-23. Rosenbaum also alleges permanent damage to his right arm as a result of the dog bite. Rosenbaum Decl. ¶ 8. Therefore, the Court can infer that the amount of force used to subdue Rosenbaum was significant.

**2. Government's Interest in Use of Force**

The second factor considers the government's interest in the use of force based on the "Graham" factors: (i) severity of the crime at issue, (ii) whether the suspect posed an immediate threat to officers, and (iii) whether the suspect was actively resisting arrest. *Graham v. Connor*, 490 U.S. 386, 396, (1989).

*First*, the Court turns to the severity of Rosenbaum's crimes that precipitated the encounter. Domestic violence interventions are considered "particularly dangerous" because more officers are killed or injured on these calls than any other type of call. *George v. Morris*, 736 F.3d 829, 839 (9th Cir. 2013). However, this factor is mitigated if the domestic disturbance is over by the time the police begin their investigation. *Id.*; *see also Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (noting that the domestic incident was over, plaintiff was physically separated from the victim, and lack of weapons present "provid[ed] little, if any, basis for the officers' use of physical force.").

On the evening of the incident, Rosenbaum's girlfriend called 911 to report that Rosenbaum had "strangled her, scratched her, pulled her hair, and forcibly held her down

United States District Court
Northern District of California

using his body weight while threatening to sexually assault her and licking her face." Zanotto Decl. ¶ 4. However, by the time the Defendant Officers arrived, the alleged domestic violence was already over. *Id.* Like *Smith*, Rosenbaum was physically separated from the victim. *Id.* ¶ 6. This factor favors Defendants, but its weight is diminished by the surrounding circumstances.

*Second*, the Court considers the "most important single element of the three specified factors: whether the suspect poses an immediate threat to the safety of the officers or others." *Smith*, 394 F.3d at 702. From Officer Dunn's perspective, Rosenbaum's noncompliance with the officers' commands presented a threat that Rosenbaum would violently resist arrest. Dunn Decl. ¶ 11; *see also* Hatzenbuhler Decl. ¶ 12. Officer Dunn knew that Rosenbaum was a suspect in a violent domestic dispute. Dunn Decl. ¶ 12(a). Officer Dunn was informed that Rosenbaum had a history of violence, including domestic violence, fighting with police officers, and assault with a deadly weapon. *Id.* ¶¶ 8-9. Officer Dunn knew that Rosenbaum had previously owned a firearm. *Id.* ¶ 8. Officer Dunn was also informed Rosenbaum was trained in mixed martial arts and may have been under the influence of narcotics at the time of the incident. *Id.* Officer Dunn also knew that Rosenbaum had refused numerous commands to surrender. *Id.* ¶ 12(c).

Defendants assert the circumstances were akin to the "objectively menacing circumstances" in the *Miller* case. 340 F.3d at 965. In *Miller*, officers pursued a fleeing suspect through "treacherous" wooded terrain at night. *Id.* The *Miller* officers knew the suspect was familiar with the territory and had the propensity to carry a weapon, thus posing the risk of an ambush. *Id.* The *Miller* court noted the use of the police dog in that scenario was reasonable in order to neutralize the plaintiff's strategic advantage. *Id.* at 968; *see also Lowry*, 858 F.3d at 1258 (noting that a burglary call in a dark commercial building and no response to officers' warnings presented "objectively menacing circumstances").

Defendants' references to the purported menacing circumstances certainly support

the initial release of the police dog, however the weight afforded these circumstances does not directly translate to the discrete issue here – the *duration* of the bite. Unlike both *Miller* and *Lowry*, the suspect here was not hidden in a darkened forest or building. Instead, Rosenbaum was in plain view surrounded by several armed police officers. *See* Hatzenbuhler Decl., Ex. D. Officer Dunn alleges the duration of the bite was necessary to ensure "Rosenbaum was under control of other officers so that he could not reach for a weapon." Dunn Decl. ¶ 25. Once Kurt engaged the bite, however, the body camera footage shows that Rosenbaum complied with the officers' commands to show his hands. *Id.* Accepting Rosenbaum's version of the events, and supported by the body camera footage, Rosenbaum was on his stomach with arms outstretched as Kurt continued to bite him for at least twenty seconds. *Id.* Moreover, none of the Defendants allege that Rosenbaum issued any specific threats to the officers or actively resisted the officers once Kurt was engaged. *See Smith*, 394 F.3d at 702. Although the circumstances preceding the bite led Officer Dunn to believe Rosenbaum could pose an imminent deadly threat, considering the evidence in the light most favorable to Plaintiff, a rational jury could very well find that he did not pose a danger to the officers during the duration of the bite.

*Third*, courts consider whether the plaintiff was resisting or attempting to evade arrest. *Lowry*, 858 F.3d at 1258. The Ninth Circuit recognizes that purely passive resistance may justify use of force, but the level of force is "dependent on the factual circumstances underlying that resistance." *Id.* (quoting *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010)). Defendants again attempt to shoehorn circumstances occurring before the bite to satisfy this factor. Specifically, Defendants allege Rosenbaum was "actively resisting when he failed to comply with officer commands to exit the home or come down the stairs." Mot. at 17. However, as noted above, Rosenbaum complied with the officers' commands to show his hands once the police dog was engaged. Dunn Decl. ¶ 17, Ex. A. Tellingly, Defendants do not assert any arguments of active or passive resistance once Kurt was deployed. Therefore, this factor weighs in Rosenbaum's favor.

**3. Balancing**

The Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Miller*, 340 F.3d at 964. As the Court established in the prior order, the initial deployment of Kurt was reasonable to subdue a non-compliant suspect. *See* ECF 63 at 12. However, the question remains as to whether the continued use of the police dog following Rosenbaum's compliance with the officers' commands to show his hands was reasonable. On balance, the *Graham* factors do not weigh heavily in either parties' favor. Notably, the most important factor – the absence of an immediate safety threat – cuts slightly in Rosenbaum's favor. In light of the severity of Rosenbaum's injuries and disputes regarding the duration of the bite and Rosenbaum's level of cooperation create issues of fact as to whether Plaintiff suffered an unnecessarily prolonged attack by the police dog. A reasonable jury could find the police dog's continued engagement after Rosenbaum was surrounded by police officers with his hands raised was unreasonable.

Accordingly, viewing the facts in the light most favorable to the Plaintiff, the Court concludes that there remains an issue of fact as to whether the duration and extent of Officer Dunn's use of the police dog was an unreasonable use of force.

**B. Clearly Established Right**

The second step tasks the court with determining whether the statutory or constitutional right is clearly established such that a reasonable officer would have known that the challenged conduct was unlawful. *Pearson*, 555 U.S. at 231. To do this, courts survey the judicial landscape to determine if the right was clearly established in the caselaw prior to the date of the incident. *Id.* at 244. A clearly established law is not defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011). Instead, the law should be sufficiently particularized to "demonstrate whether the violative nature of particular conduct is clearly established." *Id.* However, a finding of clearly established law does not require a factually identical case, but rather "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting

United States District Court
Northern District of California

United States District Court
Northern District of California

*Ashcroft*, 563 U.S. at 741).

The Defendant Officers assert they are entitled to qualified immunity because "holding the canine on a bite until officers had control of Rosenbaum to ensure he could not reach for a weapon" did not violate any clearly established constitutional or statutory right. Mot. at 20. However, a succession of Ninth Circuit caselaw prior to September 10, 2019, addressing the use of police dogs to subdue criminal suspects establishes otherwise.

An early case addressed the use of a police dog to bite a handcuffed suspect. *Mendoza v. Block*, 27 F.3d 1357, 1358 (9th Cir. 1994), as amended (May 31, 1994). In *Mendoza*, the plaintiff committed a robbery and hid some bushes. *Id.* After searching for several hours, police officers released a dog to search for him. *Id.* The police dog located plaintiff and dragged him from the bushes. *Id.* While plaintiff was held "spread-eagle" on the ground and handcuffed, the police dog bit him again. *Id.* The Ninth Circuit noted that caselaw was sparse on the issue of the appropriate use of police dogs. *Id.* at 1361. Despite the lack of guiding caselaw, the *Mendoza* court found that particularized caselaw is unnecessary for an officer to know "that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." *Id.* at 1362.

The Ninth Circuit subsequently addressed the specific issue of duration of a police dog bite. *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998). In *Watkins*, a police canine unit responded to a silent alarm at a warehouse. *Id.* at 1090. A police dog was released into the warehouse. *Id.* The dog located the suspect and began to bite him. *Id.* The police officers arrived and commanded the plaintiff to show his hands. *Id.* The plaintiff could not comply, so the dog continued to bite him "even though he was obviously helpless and surrounded by police officers with their guns drawn." *Id.* Building off its prior decision in *Mendoza*, the Ninth Circuit noted that "it was clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force." *Id.* at 1093.

A pair of recent cases further crystalize the law prohibiting continued use of canine

United States District Court
Northern District of California

force against a surrendering suspect. In *Koistra v. County of San Diego*, the court held that prior cases clearly established that "a canine officer cannot continue to use canine force against someone . . . who had surrendered by putting her arms up and asserted she was unarmed." 310 F. Supp. 3d at 1084 (S.D. Cal. 2018). Likewise, *Hartsell v. County of San Diego* is even more factually on-point to the case at hand. In *Hartsell*, police officers were effectuating a search and arrest warrant at plaintiff's home. No. 16-cv-1094-LAB-LL, 2019 WL 291965, at *1 (S.D. Cal. Jan. 23, 2019). The plaintiff, however, fled into the surrounding rural neighborhood, where he eventually hid in thick bushes. *Id.* A canine unit located plaintiff and, after several commands to come out, the officer released the police dog to engage him. *Id.* at *2. While the police dog was biting plaintiff, the officer ordered him to show his hands, to which plaintiff complied. *Id.* However, the plaintiff was further ordered to crawl out of the bushes with the dog still engaged. *Id.* at *3. Plaintiff ultimately complied, but it took "approximately 30-45 seconds" until the police dog was removed. *Id.* Based on the holdings in *Mendoza*, *Watkins* and *Koistra*, the *Hartsell* court determined that defendants were not entitled to qualified immunity because a reasonable jury could conclude that plaintiff was no longer resisting when he was ordered to crawl from the bushes with the dog still engaged. *Id.* at *15.

Here, Defendants recognize that established law prohibits a police dog from continuing to bite once "the suspect surrenders or is under control of the officers." Opp. at 21. Defendants are correct that *Watkins*, as well as *Koistra* and *Hartsell*, all provide notice that an officer cannot continue to use canine force against someone has surrendered. Defendants contend, however, that Rosenbaum neither surrendered nor was under the control of the officers. Opp. at 21. However, Rosenbaum's account of the events, coupled with body cam footage, undercuts this assertion.

First, like the plaintiff in *Watkins*, once the police officers ascended the stairs Rosenbaum was "obviously helpless and surrounded by police officers with their guns drawn." 145 F.3d at 1090. Nevertheless, Defendants assert that Rosenbaum did not give any indication of surrender prior to removal of the police dog from the bite. Opp. at 7.

While it is not clear how Defendants specifically define what constitutes surrender, it appears that either actions or statements can indicate surrender. *See id.* at 18 ("At no time did Plaintiff *do* or *say* anything to officers that indicated his surrender.") (emphasis added). While this fact remains contested, the footage shows Rosenbaum lying face down with his arms outstretched while the dog continues to bite him. Hatzenbuhler Decl., Ex. D. Although Rosenbaum does not appear to utter any words of surrender, this does not appear necessary according to Defendants' own assertions and under the caselaw. *See Hartsell*, 2019 WL 291965, at *15 (no indication of plaintiff verbally surrendering). Indeed, arms outstretched and clearly visible is the universally recognized form of surrender. A reasonable jury could therefore conclude Rosenbaum had surrendered after the police dog began to bite him. Under these circumstances, the Court concludes Defendants are not entitled to a qualified immunity defense on the duration and extent of Officer Dunn's deployment of the dog.

**III. Integral Participation and Supervisory Liability**

The TAC alleges that Sergeants Hatzenbuhler and Gutierrez, and Officers Anderson, Tapia, Vallejo, Ferguson and Ochoa were "integral participants" in Officer Dunn's use of excessive force because they failed to intervene against the use of excessive force. TAC ¶ 41; Opp. at 14.

A plaintiff may hold multiple law enforcement officers liable based on an "integral participant" theory of liability when at least one officer violates the plaintiff's constitutional rights. *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir.1996). Officers can be held liable for excessive force on a theory of integral participation only if they participate "in some meaningful way" in the specific actions that constituted the violation. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). However, integral participants must have some "personal involvement in the unlawful conduct, as opposed to mere presence at the scene." *Bonivert v. City of Clarkston*, 883 F.3d 865, 879 (9th Cir. 2018).

Furthermore, officers can be held liable for failing to intercede in situations where excessive force is claimed to be employed by other officers only if "they had an

opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (finding a failure to intervene claim failed because there was no realistic opportunity for officers to prevent a rapidly unfolding shooting).

**A. Officers Anderson and Ferguson's Participation**

Officer Anderson was the second person in the column of officers that ascended the stairs to subdue Rosenbaum. Hatzenbuhler Decl. ¶ 23. Once upstairs, Officer Anderson took control of Rosenbaum's left hand. *Id.* Likewise, Officer Ferguson took control of Rosenbaum's right side. *Id.* Defendants assert Officers Anderson and Ferguson did not have a reasonable opportunity to intercede during the dog bite. Reply at 8. Plaintiff counters that Officers Anderson and Ferguson had a reasonable opportunity to intercede during the twenty seconds the dog was engaged in the bite. Opp. at 15. Drawing the facts in a light most favorable to Rosenbaum, the Court finds a material dispute exists as to Officers Anderson and Ferguson's failure to intercede during the dog bite.

Accordingly, the Court DENIES Defendants' motion for summary judgment on Plaintiff's excessive force claim pertaining to Officers Anderson and Ferguson as integral participants.

**B. Officer Vallejo's Participation**

Officer Vallejo was the first officer up the stairs after the police dog was deployed. Hatzenbuhler Decl. ¶ 23. Officer Vallejo was "responsible for maintaining lethal coverage on Rosenbaum and the unsearched rooms to ensure the safety of the other Officers." *Id.* An officer that provides armed backup during an unconstitutional action can be found to be a full, active participant in the deprivation. *See Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Officer Vallejo stood armed over Rosenbaum while the police dog was engaged in the bite. *Id.* ¶ 17, Ex. D. Based on the body camera footage, it is a reasonable inference that Officer Vallejo was aware of the decision to utilize the police dog to bite based on the numerous warnings issued by the officers on the scene. Dunn Decl. ¶ 16. Similarly, given the tight quarters at the top of the stairs, Officer Vallejo was also likely aware of the bite as it was occurring. Hatzenbuhler Decl. ¶ 17, Ex. D. Lastly,

United States District Court
Northern District of California

United States District Court
Northern District of California

as with Officers Anderson and Ferguson, a material dispute exists as to whether Officer Vallejo could reasonably intervene during the dog bite.

Taken together, the Court DENIES Defendants' motion for summary judgment on Plaintiff's excessive force claim pertaining to Officers Vallejo as an integral participant.

**C. Sergeant Hatzenbuhler**

Sergeant Hatzenbuhler was employed as "the Canine Unit Sergeant for the San Jose Police Department" on the day of the incident. *Id.* ¶ 2. Sergeant Hatzenbuhler was "responsible for coordinating the arrest team" to take Rosenbaum into custody. *Id.* ¶ 7. Based on the body camera footage, Sergeant Hatzenbuhler was the fourth officer up the stairs. *Id.* ¶ 17, Ex. D at 10:32. At the top of the stairs, Sergeant Hatzenbuhler directed his fellow officers to engage Rosenbaum. *Id.* at 10:44. Based on Sergeant Hatzenbuhler's position of command, coupled with his position at the top of the stairs, a reasonable jury could find that Sergeant Hatzenbuhler could have reasonably intervened by ordering Officer Dunn to remove the dog earlier.

Thus, the Court DENIES Defendants' motion for summary judgment on Plaintiff's excessive force claim pertaining to Sergeant Hatzenbuhler as an integral participant.

**D. Sergeant Gutierrez**

Rosenbaum alleges that Sergeant Gutierrez "was the on-scene supervisor in charge of the seizure." TAC ¶ 23. Additionally, Rosenbaum alleges Sergeant Gutierrez was one of the officers who provided armed backup during the seizure. *See id.* ¶ 24.

Sergeant Gutierrez can be held liable in his individual capacity if he participated in the deprivation of Rosenbaum's constitutional rights. *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir.1991). Sergeant Gutierrez's liability hinges on whether he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id.* at 646 (internal corrections omitted).

As a preliminary matter, beyond Plaintiff's generic statement regarding Sergeant Gutierrez's armed backup, there is no evidence showing Sergeant Gutierrez was present

during the dog bite, let alone in the house at all during the arrest. Therefore, Plaintiff has not shown a dispute of material fact as to Sergeant Gutierrez's ability to intervene during the dog bite.

In terms of supervisory liability, Rosenbaum's allegations regarding Sergeant Gutierrez's participation are similarly scarce. First, there is no evidence showing that Sergeant Gutierrez "set in motion" the plan to utilize the police dog to apprehend Rosenbaum. Second, Plaintiff has failed to show that Sergeant Gutierrez knew or should have known that the release of the police dog would lead to the infliction of a constitutional injury on Rosenbaum. As relevant to this case, for example, Plaintiff has not shown that Sergeant Gutierrez was aware that his fellow officers would deploy a police dog on a surrendering suspect. Further undercutting Sergeant Gutierrez's supervisory liability is the fact that the Court previously dismissed Plaintiff's excessive force claim pertaining to the release of the police dog. Thus, without any indication of the officer's knowledge that the release of the dog would lead to constitutional injury, Plaintiff's claim against Sergeant Gutierrez cannot stand.

Accordingly, the Court GRANTS summary judgment in favor of Defendant Sergeant Gutierrez because Plaintiff has failed to show a dispute of material fact regarding the Sergeant's participation in the alleged constitutional deprivation.

**E. Officers Tapia and Ochoa**

Rosenbaum alleges that Officers Tapia and Ochoa were integral participants because they failed to intervene against the alleged use of excessive force. Opp. at 14. However, the factual record of these specific officers' actions is sparse. Rosenbaum merely asserts these officers were in the arrest team and were standing by with weapons drawn during the dog bite. Opp. at 16. However, as Defendants point out, Plaintiff has not put forth any facts demonstrating either officers' involvement at the scene. Mot. at 18. Despite the opportunity to come forward with any facts showing Officers Tapia and Ochoa's roles in the use of force, Rosenbaum failed to do so. *See Celotex*, 477 U.S. at 325 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her

own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate 'specific facts showing that there is a genuine issue for trial' ").

Because Rosenbaum failed to show a dispute of material fact regarding these officers' participation, the Court GRANTS summary judgment in favor of Defendant Officers Tapia and Ochoa.

**IV. State Law Claims**

Rosenbaum alleges that Officer Dunn not only "committed battery, by deliberately and intentionally allowing the K-9 to continue to bite the Plaintiff for 30 seconds" but also was negligent. TAC ¶¶ 54, 66. Officer Dunn assert that summary judgment is appropriate for both state law claims because Rosenbaum cannot show he acted unreasonably in using the police dog. Mot. at 22.

Because plaintiffs bring this claim against police officers, they must prove that defendants used unreasonable force in addition to the elements of battery. *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272, 74 Cal.Rptr.2d 614 (Cal.Ct.App.1998) ("Plaintiff must prove unreasonable force as an element of the tort."). Likewise, to prevail on a negligence claim against a police officer, the plaintiff must allege that "the police officer acted unreasonably and that the unreasonable behavior harmed" Plaintiff. *Ortega v. City of Oakland*, 2008 WL 4532550, at *14 (N.D. Cal. Oct. 8, 2008).

Because there is an issue of triable fact regarding whether Officer Dunn's use of force was unreasonable, the Court DENIES Defendants' motion for summary judgment on the battery and negligence causes of action against Officer Dunn.

**CONCLUSION**

Based on the foregoing, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment. The Court GRANTS Defendants' motion for summary judgment on plaintiffs' section 1983 claim against Sergeant Gutierrez and Officers Tapia and Ochoa.

Because a reasonable jury may infer that Officer Dunn's actions were unreasonable

United States District Court
Northern District of California

for failing to remove the police dog, the Court DENIES Defendants' motion for summary judgment as to the section 1983 claim, battery, and negligence claims against Officer Dunn. Moreover, because a reasonable jury could further infer that the remaining officers failed to intervene in the dog bite, the Court DENIES Defendants' motion for summary judgment as to Plaintiff's section 1983 claims against the Defendant Officers under the integral participation theory.

The following claims remain to be tried in this case:

(1) § 1983 claim for excessive force against Officers Dunn, Vallejo, Ferguson, Anderson, and Sergeant Hatzenbuhler;

(2) battery claim against Officer Dunn; and

(3) negligence claim against Officer Dunn.

**IT IS SO ORDERED.**

Dated: November 28, 2022

NATHANAEL M. COUSINS
United States Magistrate Judge